UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LORENA WALKER,

    Plaintiff,

v.

WILL COUNTY STATE'S ATTORNEY'S
OFFICE, JAMES W. GLASGOW, in his
individual capacity, GENE JEVITZ, in his
individual capacity, WILL COUNTY, a unit
of local government,

    Defendants.

No. 08 C 6600
Judge James B. Zagel

**MEMORANDUM OPINION AND ORDER**

This is an employment discrimination case arising from Plaintiff's employment with the Will County State's Attorney's Office ("SAO"). Plaintiff, *pro se*, asserts racial discrimination and retaliation under Title VII of the Civil Rights Act of 1964 and 42 U.S.C § 1981. Defendants come now with a motion for summary judgment. For the foregoing reasons, Defendants' motion for summary judgment is granted.

**I. STATEMENT OF FACTS[1]**

---

[1] Parties exchanged Local Rule 56.1 statements of material facts to this Court. Defendants contend that certain facts set forth by Plaintiff are either immaterial or not related to a genuine issue of material fact. For sake of clarity, I will address the facts in dispute using the number scheme utilized by Plaintiff.

    I find that Plaintiff's statements 1, 2, 3, 4, 5, 7, 8, 12, 16, 17, 18 are not in dispute. While I find statement 1 is not in dispute, I note that the events underlying the statement are contested. I strike the second paragraph of statement 1 as Plaintiff presents no evidence to show that Jevitz had any influence over Glasgow's decisions. Statement 2 is not in dispute because according to Illinois law, a State's Attorney is a state official. *See Ingemunson v. Hedges*, 549 N.E.2d 1269, 1271-72 (Ill. 1990). In regard to statement 8, I find that there is no dispute regarding the facts asserted. However, I strike the first sentence of statement 8 as it is conclusory and unsupported by the record.

This employment discrimination and retaliation case arose from allegedly discriminatory actions directed toward Plaintiff and her suspension and termination from the Will County State's Attorney's Office. Plaintiff alleges that Defendants discriminated against her because of her race, and retaliated against her because she opposed their discrimination.

In February 2006, Plaintiff filed a discrimination and harassment complaint with the County of Will Executive Office alleging discrimination and harassment on the basis of race. On August 27, 2007, Plaintiff filed a Charge of Discrimination and Retaliation with the Equal Employment Opportunity Commission ("EEOC") which was cross-filed with the Illinois Department of Human Rights ("IDHR").

Plaintiff was employed at the SAO as a Support Staff Coordinator and Legal Secretary from April 12, 1996 to July 17, 2007. In December 2004, Glasgow was elected to Office at which time he promoted Plaintiff and gave her a $10,000 salary increase. In January 2005, Glasgow hired his father-in-law Jevitz as the Director of Operations.

---

In regard to statement 6, I find that the first sentence is not in dispute. I strike the second sentence because it is conclusory and unsupported by the record. I find statement 9 to be immaterial as there is no evidence that Jevitz took any step to eliminate Plaintiff's position. As to statement 10, I strike the first two paragraphs as conclusory and unsupported by the record, and admit the remaining five paragraphs. In regard to statement 11, I find the first paragraph is not in dispute. I strike paragraph two of statement 11 because it is conclusory and unsupported by the record. I also strike paragraph three of statement 11 because it does not present an issue of material fact. I find no dispute regarding paragraph four and five of statement 11. I find no dispute regarding paragraph one of statement 13. Although I acknowledge a dispute within the second paragraph, in regard to whether Plaintiff was denied union representation while receiving an oral warning, I do not find this fact to be material. I find Statement 19, although contested, to be immaterial to the issue of liability.

I find that statements 14 and 15 contain disputes regarding material facts, and I therefore will consider them for purposes of this motion.

Plaintiff alleges that from January 2006 through January 2008 she was subjected to racial discrimination. First, Plaintiff points to a June 2005 conversation between Jevitz and a secretary at the SAO. In this conversation, Jevitz discussed eliminating Plaintiff's position, stated that he had been previously been passed over for a promotion by a "Black guy," that he did not like working with "Blacks" and that he and his wife were verbally abused by "Blacks" while working at the Secretary of State's Office. Defendants do not deny that Jevitz made these statements, but do deny that Jevitz was ever overlooked for a promotion at the Secretary of State's Office or that he and his wife were ever verbally abused by blacks while working at the Secretary of State's Office.

Next, Plaintiff asserts that on January 17, 2006, Plaintiff asked Jevitz to approve a personal day, which he did. However, on January 30, 2006, Jevitz reversed his decision and applied Plaintiff's personal day toward sick time. Jevitz contends that her personal day was applied toward sick time because she had exhausted her annual allotment of personal time; he concedes that his initial approval of her personal day was in error. Plaintiff maintains that she was entitled to her personal time, in accordance with the December 1, 2003- November 30, 2006 Collective Bargaining Agreement between the County of Will and AFSCME Local 1028 Section 13.6(b).

Plaintiff states that on February 9, 2006 she telephoned Jevitz to discuss the issue of her personal day. During that phone call, Jevitz screamed and yelled at her saying he was "tired of getting kicked in the shins" because of her and that he "did not care about her rights." Defendants do not deny these asserted facts. Subsequent to this conversation, Plaintiff states that she sent two emails to Glasgow to discuss her concerns about Jevitz's conduct. One email was

sent on February 10, 2006, the second was sent on February 14, 2006. Glasgow did not respond to her emails, a fact that Defendants do not dispute. Glasgow maintains that his regular practice is to have his assistant read his emails and to tell him what he received. As Glasgow believed that this matter should be handled by Jevitz, he did not respond to Plaintiff's emails.

Plaintiff next scheduled a meeting with Glasgow for February 17, 2006. Plaintiff arrived for her scheduled meeting, but was made to wait outside of his office for one hour before being told that Glasgow would not see her. While she was waiting Jevitz entered Glasgow's office and later came out to tell her that Glasgow would not be able to see her. Defendants do not dispute this fact. Defendants admit that Glasgow was in a meeting with Greg DeBord, the First Assistant State's Attorney and canceled Plaintiff's meeting. On February 17, 2006, Plaintiff filed a grievance.

Next, Plaintiff alleges that in March 2006 Glasgow directed Jevitz to "write up" Plaintiff based on his belief that she had disobeyed a direct order to attend the seminar. Plaintiff denies that she was ever given a direct order to attend the training seminar, a fact which Defendants contest. On April 5, 2006, Plaintiff informed Glasgow and Jevitz by certified mail that she had not been ordered to attend training in Chicago and that she believed that she was being attacked because of the grievance she filed related to the personal time, and that she would be filing a lawsuit. On April 18, 2005, Plaintiff filed a Discrimination and Harassment Complaint with Will County asserting that Jevitz had discriminated against her based on her race. The May 10, 2006 answer to Plaintiff's complaint stated that the grievance was attributed to a communication issue.

Plaintiff claims that in response to the filing of her grievances she was retaliated against. First, Plaintiff states that in the summer of 2006, Plaintiff was having lunch with six to eight

other secretaries in a restaurant. Jevitz walked into a restaurant and greeted everyone at the table, including another black secretary, but did not greet Plaintiff. Next, Plaintiff asserts that her suspension and subsequent termination was a result of retaliation.

The following facts surrounding Plaintiff's suspension and termination are undisputed. In 2007, Plaintiff was in the process of divorcing her husband. Between February 2007 and April 2007, Plaintiff made calls to her husband's girlfriend, leaving voice messages for the girlfriend. The girlfriend complained about Plaintiff's phone calls to the police who investigated the matter and issued an arrest warrant for Plaintiff. In May 2007, Glasgow was informed that an arrest warrant had been issued for Plaintiff for telephone harassment. The girlfriend complained that Plaintiff was acting in violation of a protective order. Glasgow decided that Plaintiff should be suspended immediately pending an investigation. Glasgow was further concerned that Plaintiff had misused SAO resources in making the phone calls. Glasgow consulted with Greg DeBord, First Assistant State's Attorney, and Mary Tatroe, Chief of the Civil Division, when making his decision to suspend. On May 7, 2007, a pre-disciplinary meeting was held with Plaintiff and a representative of her union. At the meeting, Plaintiff denied the alleged conduct and stated that she had only made two phone calls to the girlfriend. The investigation concluded that Plaintiff had not violated an order of protection.

On June 2007, the DuPage County State's Attorney's Office filed five misdemeanor counts against Plaintiff based on her phone calls to the girlfriend. A copy of these charges were forwarded on to the SAO. In June or July 2007, DeBord contacted the DuPage County State's Attorney office to check on the status of Plaintiff's charges. DeBord was told that prosecutors thought that Plaintiff would agree to plead guilty. DeBord relayed this information to Glasgow.

5

In July 2007, Glasgow made the decision to terminate Plaintiff's employment. On July 19, 2007, Glasgow signed and mailed Plaintiff's termination letter.

On September 19, 2007, Plaintiff pleaded guilty to two misdemeanors: Attempted Intimidation-Physical Harm and Harassment by Telephone.

## II. STANDARD OF REVIEW

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The facts presented are to be construed in a light most favorable to the nonmoving party. *Smith v. City of Chicago*, 242 F.3d 737, 742 (7th Cir. 2001). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986).

## III. DISCUSSION

Title VII makes it illegal for an employer to discriminate against an individual because of their race with respect to his compensation, terms, conditions, or privileges of employment. 42 U.S.C. § 2000e-2(a)(2). Section 1981 grants all people equal protection under the laws of the United States. At the outset, I note that claims arising under 42 U.S.C. § 1981 are analyzed using the same rubric as Title VII claims. *Williams v. Waste Management of Illinois, Inc.*, 361 F.3d 1021, 1028 (7th Cir. 2004); *Johnson v. City of Fort Wayne, Ind.*, 91 F.3d 922. 940 (7th Cir. 1996) ("Although Section 1981 and Title VII differ in the types of discrimination they proscribe,

the methods of proof and elements of the case are essentially identical.") There are two ways of demonstrating a prima facie case of Title VII race discrimination: the direct method and the indirect method. *Luckie v. Ameritech Corp.*, 389 F.3d 708, 714 (7th Cir. 2004). Accordingly, both Title VII and § 1981 claims must be analyzed using the direct and indirect method of proof. *Atanus v. Perry*, 520 F.3d 662, 671-72 (7th Cir. 2008).

Defendants assert that they are entitled to summary judgment on Title VII claims to the extent that those claims are based on conduct occurring more than 300 days before Plaintiff filed her charge of discrimination. Furthermore, they assert that they are entitled to summary judgment on Title VII and § 1981 discrimination claims because Jevitz's alleged remarks are insufficient to impute racial animus and because Plaintiff was fired for legitimate and non-pretextual reasons. Finally, Defendants assert that summary judgment is appropriate for Plaintiff's Title VII and § 1981 retaliation claims because the only materially adverse action taken, Plaintiff's suspension and termination, was not in response to her protected conduct, but based entirely on Plaintiff's criminal actions.

A. Plaintiff's Time-Barred Conduct

A Title VII plaintiff must file a charge with the EEOC regarding a discrete act of discriminatory conduct within 300 days of the occurrence. *Roney v. Illinois Dept. of Transp.*, 474 F.3d 455, 460 (7th Cir. 2007). An individual's ability to recover for discriminatory acts that fall outside this 300-day limitations period depends on the type of discriminatory act at issue. *See Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 110-18 (2002); *Lucas v. Chi. Transit Authority,* 367 F.3d 714, 723 (7th Cir. 2004). In *Morgan,* the Supreme Court distinguished two types of discriminatory acts, "discrete" acts and acts that contribute to a "hostile work

environment." *Morgan,* 536 U.S. at 110-18. Each 'discrete act' is a separate actionable unemployment practice that restarts the clock for filing charges alleging that act. *Lucas,* 367 F.3d at 723; *Morgan,* 536 U.S. at 114. Accordingly, "discrete discriminatory acts that fall outside the statute of limitations are time-barred even though they may relate to other discrete acts that fall within the statute of limitations." *Lucas,* 367 F.3d at 723. Examples of 'discrete' acts include "termination, failure to promote, denial of transfer, or refusal to hire." *Morgan,* 536 U.S. at 114.

In *Morgan,* the Court differentiated acts contributing to a hostile work environment as from discrete acts. *Id.* at 115. Acts that contribute to a hostile work environment include "repeated conduct" that "occurs over a series of days or perhaps years." *Id.*; *Lucas,* 367 F.3d at 724. Therefore, although a single discriminatory act may not alone be actionable, the combined effect of many acts may result in a "hostile work environment." *Morgan,* 536 U.S. at 115-16; *see also Lewis v. City of Chi.,* 528 F.3d 493 (7th Cir.2008) ("The first instance of a coworker's offensive words or actions may be too trivial to amount to actionable harassment, but if they continue they may eventually amount to an actionable pattern of harassing behavior.").

Defendants allege that because Plaintiff filed her charge of discrimination with the EEOC on August 27, 2007, her Title VII claim cannot be based on any of the following allegedly discriminatory acts: (1) Jevitz's allegedly discriminatory and biased comments about black people; (2) Jevitz's denial of Plaintiff's personal day; (3) Plaintiff's oral warning for failure to attend a training session; and (4) Jevitz's failure to greet Plaintiff at a restaurant. I do not find these instances "discrete" acts and therefore they are not time barred.

B. Racial Discrimination

Under the direct method of proof, a plaintiff must point to evidence that would allow a jury to find the adverse employment action at issue was taken for a discriminatory reason. *Jones v. City of Springfield, Ill.*, 554 F.3d 669, 671 (7th Cir. 2009). Evidence used in the direct method can be direct or circumstantial in nature, but must directly demonstrate a discriminatory reason for the employee's action. *Hasan v. Foley & Lardner, LLP*, 552 F.3d 520, 527 (7th Cir. 2008). Direct evidence "usually requires an admission from the decision-maker about his discriminatory animus, which is rare." *Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1114 (7th Cir. 2009). Circumstantial evidence allows a trier of fact to infer intentional discrimination by the decision-maker. *Nichols v. Southern Ill. Univ-Edwardsville*, 510 F.3d 772, 781 (7th Cir. 2007). Examples of circumstantial evidence include: "suspicious timing, ambiguous oral or written statements, and behavior toward or comments directed at other employees in the protected group." *Nagle*, 554 F.3d at 1114.

Under the indirect method, the plaintiff must establish a prima facie case of discrimination by demonstrating that: (1) she is a member of a protected class, (2) she reasonably performed her job to her employer's expectations, (3) she suffered an adverse employment action, and (4) her employer treated similarly situated employees outside her protected class more favorably. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Contreras v. Suncast Corp.*, 237 F.3d 756, 759 (7th Cir. 2001). If Plaintiff satisfies each of these elements, the burden then shifts to her employer to offer a legitimate, non-discriminatory reason for the employment decision. *McDonnell Douglas*, 411 U.S. at 802-03. If her employer successfully satisfies this

requirement, then the burden shifts back to Plaintiff to prove that her employer's stated reason is a pretext for discrimination. *Id*. at 804.

Regardless of whether Plaintiff proceeds according to the direct or indirect method of proof, she must show a materially adverse employment action. *See, e.g., Haugerud v. Amery School District,* 259 F.3d 678, 691 (7th Cir.2001). For purposes of Title VII, "an adverse employment action is a significant change in the claimant's employment status such as hiring, discharge, denial of promotion, reassignment to a position with significantly different job responsibilities, or an action that causes a substantial change in benefits." *Rhodes v. Illinois Dept. of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004); *See, e.g., Bell v. EPA,* 232 F.3d 546, 555 (7th Cir. 2000). In this case, the only adverse employment actions Plaintiff has identified are her suspension and subsequent termination, however, Plaintiff does not allege that she was suspended or terminated because of discrimination, but rather out of retaliation. The other conduct Plaintiff complains of – the denial of her personal day, unanswered emails, the canceled meeting, her oral warning, and a failure to greet her at a restaurant– did not significantly affect the terms and conditions of her employment. *See Beverly v. Kaupas*, No. 05 C 6338, 2008 WL 624045 at *14 (N.D.Ill. Feb. 29, 2008) (denial of personal day is not an adverse employment action)(citing *Rhodes*, 359 F.3d at 505); *Kerstig v. WalMart Stores, Inc.*, 250 F.3d 1109, 1118 (7th Cir. 2001)(warnings and reprimands do not constitute adverse employment actions if the plaintiff does not suffer any tangible job consequences). I therefore find that Plaintiff has failed to present facts sufficient to sustain a claim of discrimination under Title VII.

Even assuming Plaintiff did present facts sufficient to show an adverse employment action, her claims would still fail. First, I find no direct evidence of discrimination. Turning to circumstantial evidence, the only facts to indicate that Jevitz's actions were motivated by

10

Plaintiff's race are his comments to another SAO employee regarding black people. The only employment decision that Jevitz made with respect to Plaintiff was his denial of her personal day in January 2006. The Defendants state that Plaintiff exhausted her annual allotment of personal days in March of 2005 when she was allowed to use her entire allotment before it had accrued. Whether or not Plaintiff was entitled to a personal day when she was denied her request by Jevitz is in dispute. However, the denial of personal day is not an adverse action that is provided relief under Title VII. *Beverly v. Kaupas* , No. 05 C 6338, 2008 WL 624045 at *14 (N.D.Ill. Feb. 29, 2008) (citing *Rhodes*, 359 F.3d at 505).

Plaintiff presents no evidence to establish that Glasgow acted out of racial animus; however, Plaintiff does allege that because Jevitz is Glasgow's father-in-law, he influenced Glasgow's decision making. The only evidence Plaintiff presents, aside from this conclusory statement, is that when Glasgow canceled his meeting with her, Jevitz entered the room and then told her that her meeting was canceled. This alone is insufficient to defeat Defendants' motion for summary judgment. Therefore, Plaintiff is unable to sustain a discrimination claim under the direct method.

Plaintiff cannot establish a prima facie case of discrimination under the indirect method because there is no evidence in the record to establish that any other SAO employee was similarly situated and was treated more favorably. No other employee has been shown to have used more than three personal days in a year, received an email response from Glasgow about personal days, allegedly disobeyed an order from Glasgow and not be disciplined, or committed criminal offenses and be allowed to remain employed. Therefore, Plaintiff has failed to establish a prima facie case of discrimination, and Defendants are entitled to summary judgment on Plaintiff's Count I for racial discrimination.

C. Retaliation

Plaintiff can prove retaliation by either the direct or indirect method of burden shifting. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 664 (7th Cir. 2006). Under the direct method, the Plaintiff must show that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse action; and (3) there was a causal connection between the two. *Id*. To prove retaliation under the indirect method, Plaintiff must establish a prima facie case of retaliation by showing that: (1) she engaged in a statutorily protected activity; (2) she met the employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Id.* "If the plaintiff establishes a prima facie case, the burden of production shifts to the employer to present evidence of a non-discriminatory reason for its employment action." *Id*. (citing *Adusumilli v. City of Chicago,* 164 F.3d 353, 362 (7th Cir.1998)). "If the employer meets its burden, the burden shifts back to the plaintiff to demonstrate that the employer's reason is pretextual." *Moser v. Indiana Dept. Of Corrections,* 406 F.3d 895, 904 (7th Cir. 2005).

In this case, Plaintiff has established that she engaged in protected activity in April 2006 when she sent her grievance letter to Jevitz and Glasgow. Accordingly, the allegedly retaliatory behavior Plaintiff asserts is Jevitz's failure to greet her at the restaurant and Plaintiff's suspension and termination.

Plaintiff is unable to establish retaliation through the indirect method because she has shown no similarly situated employee who engaged in the same protected activity and was treated more favorably. I therefore turn to analysis under the direct method.

As an initial matter, the Supreme Court has noted that Title VII does not set forth a "general civility code for the American workplace" and "an employee's decision to report

12

discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington Northern and Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006) (internal citations and quotations omitted). I find that Jevitz's failure to greet Plaintiff at a restaurant is such a petty slight and not an actionable example of retaliation.

I now turn to Plaintiff's suspension and termination in 2007. Plaintiff contends that she was suspended and terminated because of her 2006 grievances. Although Plaintiff has established that she participated in a protected activity and suffered an adverse action, Plaintiff is unable to show a causal connection between the two. The record establishes that Defendants had a legitimate reason to suspend and terminate Plaintiff. Indeed, Plaintiff pleaded guilty to criminal misdemeanor charges presented by the State's Attorney of another county. Furthermore, it is undisputed that Glasgow felt it was improper and unacceptable for the SAO to continue to employ anyone who was known to have engaged in criminal conduct, particularly where the criminal conduct occurred at the workplace. I find that no reasonable trier of fact would find that Glasgow's decisions to suspend and terminate Plaintiff were motivated by a desire to retaliate against Plaintiff her prior discrimination complaints.

## IV. CONCLUSION

For the foregoing reasons I grant Defendants' motion for summary judgment.

ENTER:

James B. Zagel
United States District Judge

DATE: December 23, 2009